O

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

11
12
13
14
15
16
17
18

| | |
|---|---|
| METROPOLITAN BUSINESS MANAGEMENT, INC.; ET AL., | Case No. CV 05-8306 CAS (CWx) |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES** |
| vs. | |
| ALLSTATE INSURANCE COMPANY | |
| Defendant. | |

19
20
21
22
23
24
25
26
27
28

I.      **INTRODUCTION**

The present action arises out of an insurance coverage dispute.  On October 18, 2005, plaintiffs Metropolitan Business Management, Inc. ("MBM") and John Khaki filed the instant action against defendant Allstate Insurance Co. ("Allstate") in Los Angeles County Superior Court alleging (1) breach of contract; (2) tortious breach of the implied covenant of good faith and fair dealing; and (3) declaratory relief.  On November 23, 2005, defendant timely removed to this Court on the basis of diversity of citizenship.

On July 9, 2009 the jury returned a verdict in favor of plaintiffs.  The jury found

QUESTION NO. 1

      Did Allstate Insurance Company withhold any policy benefits owed to plaintiffs under the Allstate policy?

      Check one:

      _X_ Yes

      ____ No

. . .

QUESTION NO. 3

      Was Allstate's withholding of policy benefits unreasonable?

      Check one:

      _X_ Yes

      ____ No

. . .

QUESTION NO. 8

      Do you find that Allstate's conduct was malicious, oppressive or in reckless disregard of plaintiff's rights?

      Check one:

      _X_ Yes

      ____ No

. . .

QUESTION NO. 9

      Was the conduct constituting malice, oppression, or fraud committed by one or more officers, directors, or managing agents of Allstate acting on behalf of Allstate?

      Check one:

      _X_ Yes

      ____ No

Special Verdict Form.

On July 10, 2009, the parties submitted the punitive damage phase to the Court for ruling. On July 17, 2009, plaintiffs filed their brief concerning punitive damages. On July 27, 2009, defendant filed its brief concerning punitive damages. On July 29, 2009, plaintiffs filed a reply brief concerning punitive damages. On August 4, 2009, defendant filed a reply brief concerning punitive damages. This matter is presently before the Court.

## II.    DISCUSSION

Plaintiffs request punitive damages in the amount of $7,000,000, which is 6.1 times general damages of $1,000,000 and $146,269.15 in prejudgment interest. Pl. Brief at 2. Plaintiffs argue that punitive damages are appropriate because all of defendant's witnesses testified that it was defendant's corporate policy to ignore earlier policies in determining coverage, which was clearly illegal. Id. (citing Allstate Ins. Co. v. Fibus, 855 F.2d 660 (9th Cir. 1988)). Plaintiffs further argue that a punitive damage award of $7,000,000 is necessary to punish and deter defendant from continuing its illegal policies. Id. at 4.

### A.    Judicial Notice of March 31, 2009 Quarterly Financial Statement

Plaintiffs contend that defendant's net worth is $14,618,306,008. Plaintiffs assert that Cal. Ins. Code § 900 requires defendant to file annual and quarterly financial statements with the California Department of Insurance ("DOI"). Id. at 5. Plaintiffs argue that the DOI publishes for the public the quarterly and annual statements by all insurers doing business in California. Id. Plaintiffs have attached defendant's quarterly financial statement as of March 31, 2009, filed with the DOI as Exhibit B to their fourth request for judicial notice. Id. at 6. Plaintiffs similarly argue that Cal. Ins. Code § 931 requires defendant to file annual and quarterly financial statements with the National Association of Insurance Commissioners ("NAIC"). Id. Plaintiffs have attached a copy of defendant's quarterly financial statement as of March 31, 2009, which was published on the NAIC website. Plaintiffs argue that the Court can judicially notice defendant's net worth as shown in its quarterly financial statement, which is a matter of public

record.  Id. at 7-8 (citing Metzler Inv. GMBH v. Cornithian Colleges, Inc., 540 F.3d 1049, 1064 n. 7 (9th Cir. 2008); MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 933-34 (8th Cir. 2004)).  Plaintiffs further argue that defendant's net worth can be judicially noticed because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Id. at 10 (citing Fed. R. Evid. 201(b)).

Plaintiffs further contend that Cal. Civ. Code § 3295 is not applicable because it is concerned with protecting a defendant from the premature disclosure of its financial condition.[1]  Id. at 10-11 (citing Medo v. Superior Court, 205 Cal. App. 3d 64, 67-68 (1988)).  Plaintiffs contend that they did not have to conduct discovery pursuant to

---

[1] Section 3295 provides, in pertinent part

(a) The court may, for good cause, grant any defendant a protective order requiring the plaintiff to produce evidence of a prima facie case of liability for damages pursuant to Section 3294, prior to the introduction of evidence of:
> (1) The profits the defendant has gained by virtue of the wrongful course of conduct of the nature and type shown by the evidence.
> (2) The financial condition of the defendant.

(b) Nothing in this section shall prohibit the introduction of prima facie evidence to establish a case for damages pursuant to Section 3294.
. . .
(d) The court shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294. Evidence of profit and financial condition shall be admissible only as to the defendant or defendants found to be liable to the plaintiff and to be guilty of malice, oppression, or fraud. Evidence of profit and financial condition shall be presented to the same trier of fact that found for the plaintiff and found one or more defendants guilty of malice, oppression, or fraud.

Cal. Civ. Code § 3295.

§ 3295 because defendant was required by California law to disclose its financial condition to the DOI, which made that information available to the public. Id. at 11. Plaintiffs further contend that defendant did not object to plaintiffs' prior requests on June 24, 2009, and June 29, 2009, that the Court judicially notice defendant's March 31, 2009 financial statement. Id. Additionally, plaintiffs assert that they inadvertently presented the annual financial statement for defendant's parent corporation on July 10, 2009, rather than defendant's March 31, 2009 quarterly financial statement. Id.

Defendant responds that an award of punitive damages "must be supported by *meaningful* evidence of defendant's financial condition." Def. Brief at 5 (quoting Rober L. Cloud & Assoc., Inc. v. Mikesell, 69 Cal. App. 4th 1141, 1151-52 (1999)). Defendant contends that its objections to plaintiffs' proffered evidence of defendant's financial worth were timely. Id. at 9. Defendant argues that plaintiffs did not request judicial notice of any document regarding defendant's financial matters until after this case was first called to trial on June 23, 2009. Id.

Moreover, defendant argues that plaintiffs' fourth request for judicial notice is untimely and cannot be considered for purposes of establishing defendant's financial condition. Id. at 10. Defendant contends that the Court may take judicial notice of the fact that defendant filed a quarterly statement with the DOI and NAIC, but cannot take judicial notice of the truth of the matters asserted therein. Id. Defendant further contends that its quarterly statement does not state defendant's net worth. Id. Defendant argues that plaintiffs "ask the Court to do their work and perform a calculation of Allstate's net worth by using a definition of worth Plaintiffs located on the virtually unknown website InvestorWords.com." Id. Defendant contends that "the net worth of an insurance company is a complex accounting calculation that differs from calculating the net worth of a typical company." Id. at 11. Defendant further asserts that "[p]olicyholders' surplus, which is essentially an insurance company's equivalent to a regular company's net worth, 'is meant to convey the idea that total balance sheet assets are available primarily for the satisfaction of policy holder claims.'" Id. at 12.

1
2
3
4
5
6
7
8
9

Plaintiffs respond that they requested that the Court judicially notice defendant's 132 page quarterly financial statement for March 31, 2009 prior to the start of trial on June 24, 2009, and on June 29, 2005.  Pl. Reply at 1.  Plaintiff further argues that defendant appears to admit that its net worth is $13,089,961,017, the amount of policyholder's surplus listed in defendant's quarterly financial statement, because defendant asserted in its brief that policyholder's surplus is "is essentially an insurance company's equivalent to a regular company's net worth."  Id. at 1-2.  Plaintiffs further respond that their calculation of net worth is appropriate and that the Court should notice defendant's quarterly financial statement as for March 31, 2009.  Id. at 5-6.

10
11
12
13
14
15

Federal Rule of Evidence 201(b) states that "a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record."  Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986).

16
17
18
19
20
21
22
23
24
25

Accordingly, the Court takes judicial notice of defendant's quarterly financial statement for March 31, 2009 filed with the NAIC, which is attached to plaintiffs' fourth request for judicial notice as exhibit B.  Defendant is required by law to provide this information and its officers certify its accuracy.  See Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("a district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC. . . .The practice of taking judicial notice of public documents is not new.").  Defendant's net worth, which is defined by Black's Law Dictionary as "[a] measure of one's wealth, usually calculated as the excess of total assets over total liabilities," can readily be calculated by reference to its financial statement as $14,618,306,008.[2]  Black's Law Dictionary (8th

26
27
28

[2] To the extent defendant argues that its net worth cannot be approximated by subtracting its liabilities from its assets, defendant appears to acknowledge that
(continued...)

Ed. 2004); Branch Bank & Trust Co. v. Beams, 2009 WL 362956 at *2 (E.D. Tenn. 2009) ("the Court finds that, for the purposes of the punitive damages phase of this lawsuit, net worth is defined as total assets minus total liabilities.") Therefore, because defendant's net worth is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" it is subject to judicial notice. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); Happel v. Wal-Mart Stores, Inc. 2007 WL 495277, 3 (N.D. Ill. 2007) ("Plaintiffs' motion for judicial notice of [defendant's] net sales and net income for the years 1993, 2003 and 2006, pursuant to FRE 201(b), is granted in part and denied in part. Only current net worth relates to punitive damages.")

Moreover, plaintiffs' fourth request for judicial notice is not untimely because judicial notice can be taken at any stage of a proceeding. Fed. R. Evid. 201(f); In re Indian Palms Associates, Ltd., 61 F.3d 197, 205 (3d Cir. 1995). Furthermore, Cal. Civ. Code § 3295 does not apply because the purpose of that statute is "to safeguard defendants against the premature disclosure, both in discovery and at trial, of their profits and financial condition.  But disclosing such matters threatens no prejudice once a bifurcated trial has been held and the issues of liability, compensatory damages and malice, oppression, or fraud have been resolved against the defense. . ." Torres v. Automobile Club of Southern California, 15 Cal. 4th 771, 778-779 (1997).

**B.    Punitive Damages**

Defendant argues that plaintiffs' claim for $7,000,000 in punitive damages is not supported by law. Id. at 15.  Defendant contends that this award is excessive because the compensatory award was substantial and "[w]hen compensatory damages are substantial,

---

[2](...continued)
policyholder's surplus is "is essentially an insurance company's equivalent to a regular company's net worth."  Pl. Reply at 1-2.  This amount is listed as $13,089,961,017 in defendant's March 31, 2009, quarterly financial statement and also supports the punitive damages awarded herein.

a lesser ratio, perhaps only equal to compensatory damages, may reach the outermost limit of the due process guarantee." Id. (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003)).

Plaintiffs respond that the Court should award at least $7,000,000 in punitive damages given that defendant (1) concealed form AU9700 from its claims analyst and coverage counsel when they considered the tender of the underlying lawsuit; (2) concealed form AU9700 from plaintiff and this Court until May 2006; (3) refused to investigate the applicability of the earlier policy contrary to its duty under California law; (4) adopted an unreasonably narrow interpretation of the language in form AU9700 in order to deny coverage; (5) concealed documents showing that plaintiffs had been added as insureds in 1995; (6) adopted a claims procedure contrary to the mandate of California law; and (7) refused to provide policy benefits to plaintiffs for more than 8 years by concealing records of their status as added insureds and mortgagee insureds. Id. at 12 (citing Textron Financial Corp. v. Nat'l Union Fire Ins. Co of Pittsburgh, 118 Cal. App. 4th 1062, 1081-85 (2004)). Plaintiff further argues that plaintiffs were economically vulnerable and that Khaki had to use his savings and family resources to successfully defend the Felman lawsuit. Id.

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996). The Supreme Court has "instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." State Farm, 538 U.S. at 419. "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed

a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." Id.

The Court concludes that a punitive damage award of $7,000,000 would be excessive. However, because plaintiff Khaki has suffered non-economic damages and was financially vulnerable, the Court concludes that a punitive damage award of $3,000,000 is appropriate. State Farm, 538 U.S. at 419. Given defendant's financial condition, the Court concludes that this amount "will deter [defendant] and others from committing similar misdeeds." College Hospital Inc. v. Superior Court, 8 Cal. 4th 704, 712 (1994).

**III.    CONCLUSION**

In accordance with the foregoing, the Court hereby GRANTS plaintiff's request for punitive damages in the amount of $3,000,000.


IT IS SO ORDERED


Dated: August 6, 2009                     _____
                                          CHRISTINA A. SNYDER
                                          UNITED STATES DISTRICT JUDGE