1

2

3

4

5

6

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                     WESTERN DIVISION

O

JS - 6

11  METROPOLITAN BUSINESS          )    Case No. CV 05-8306 CAS (CWx)
    MANAGEMENT, INC.; ET AL.,      )
12                                 )
            Plaintiffs,            )    **ORDER DENYING DEFENDANT'S**
13                                 )    **MOTION FOR JUDGMENT AS A**
    vs.                            )    **MATTER OF LAW**
14                                 )
15  ALLSTATE INSURANCE COMPANY     )
                                   )
16          Defendant.             )
                                   )
17                                 )
    _____ )
18

19

20  **I.    INTRODUCTION**

21          The present action arises out of an insurance coverage dispute.  On October 18,

22  2005, plaintiffs Metropolitan Business Management, Inc. ("MBM") and John Khaki

23  filed the instant action against defendant Allstate Insurance Co. ("Allstate") in Los

24  Angeles County Superior Court alleging (1) breach of contract; (2) tortious breach of the

25  implied covenant of good faith and fair dealing; and (3) declaratory relief.  On

26  November 23, 2005, defendant timely removed to this Court on the basis of diversity of

    citizenship.

27          On May 26, 2006, this Court granted summary judgment for defendant.  Plaintiffs

28  timely appealed to the Ninth Circuit Court of Appeals.  On June 11, 2008, the Ninth

Circuit reversed this Court's grant of summary judgment and remanded the case for further proceedings.

On January 26, 2009, this Court denied plaintiffs' motion for summary judgment. The Court denied plaintiffs' motion as to their breach of contract claim because factual disputes existed as to which policy form applied and whether plaintiffs were covered as "additional insureds" or "mortgagee insureds." The Court further denied plaintiffs' motion as to their breach of the implied covenant of good faith and fair dealing claim because the Court could not conclude that plaintiffs were unequivocally entitled to coverage. On March 16, 2009, the Court denied defendant's motion for summary judgment on the same grounds.

On July 9, 2009 the jury returned a verdict in favor of plaintiffs. The jury found

QUESTION NO. 1

Did Allstate Insurance Company withhold any policy benefits owed to plaintiffs under the Allstate policy?

Check one:

   _X_ Yes

   ____ No

. . .

QUESTION NO. 3

Was Allstate's withholding of policy benefits unreasonable?

Check one:

   _X_ Yes

   ____ No

. . .

QUESTION NO. 8

Do you find that Allstate's conduct was malicious, oppressive or in reckless disregard of plaintiff's rights?

Check one:

1       X   Yes

2    ＿＿＿  No

3    . . .

4    QUESTION NO. 9

5

6         Was the conduct constituting malice, oppression, or fraud

7    committed by one or more officers, directors, or managing agents of

8    Allstate acting on behalf of Allstate?

9         Check one:

10      X   Yes

11   ＿＿＿  No

12   Special Verdict Form.

13        On July 6, 2009, defendant filed the instant motion for judgment as a matter of

14   law.  On July 20, 2009, defendant filed a trial brief in opposition to plaintiffs' claim for

15   declaratory relief.  On July 27, 2009, plaintiffs filed a brief in support of their claim for

16   declaratory relief.  Defendant's motion and plaintiff's claim for declaratory relief are

17   presently before the Court.

18   **II.    BACKGROUND**

19        This lawsuit concerns defendant Allstate's breach of an insurance policy by

20   failing to defend MBM and its sole shareholder and president, John Khaki, from a

21   lawsuit.  8/31 Tr. at 5:4-8.  On October 3, 1988, MBM became the beneficiary of the

22   first trust deed on property located at 29244 Greenwater Road in Malibu, California

23   ("the Greenwater property").  8/31 Tr. at 5:9-12.  The Greenwater property was owned

24   by Dominic Annino, who entered into a contract with MBM and Khaki to provide

25   various services for him related to various properties, which included selling properties,

26   making repairs to properties and managing properties.  8/31 Tr. at 5:15-25; Ex. 1.  At the

27   time the first trust deed was recorded, defendant issued the Landlords Package Policy,

28   policy No. 014112981 ("the policy") form AU9700 to Mr. Annino, which provided

3

coverage for damage to the property and general liability protection from third party lawsuits.  8/31 Tr. at 6:17-20; Ex. 19.  At the time policy form AU9700 was issued, MBM was a mortgagee of the Greenwater property.  Joint Pretrial Order ¶ 6.

Form AU9700 provided that "[a]ll provisions of this policy apply to . . . mortgagees" and specifically provided coverage for misrepresentation claims brought by third parties against the insureds.  Ex. 19 at 15, ¶ 9; 8/31 Tr. at 6:23-25.  In December 1997, defendant changed the policy to form AP529, but did not provide notice of this change to MBM or Khaki.  Policy form AP529 did not provide general liability protection to mortgagees.  8/31 Tr. at 7:5-9; Ex. 75 at 17-18 ("All provision of Section I of this policy apply to these mortgagees").

On May 18, 2001, Eliot and Cyndi Felman sued MBM and Khaki for fraud and conspiracy seeking damages on the grounds that MBM had made misrepresentations with respect to the amount owing on its deed of trust encumbering the Greenwater property. 8/31 Tr. at 9:23-10:3; Joint Pretrial Order ¶¶ 14-15. Khaki and MBM tendered the Felman suit to defendant, which defendant rejected.  Joint Pretrial Order ¶¶ 18, 22. Defendant's policy was to look to the policy form that was in effect at the time of the lawsuit and not investigate whether earlier policy forms applied.  MBM and Khaki spent $387,153.43 defending the Felman suit.  8/31 Tr. at 5:7-8; Joint Pretrial Order ¶ 19.

## III.   LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . ." Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 139, 149 (2000).  If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a), a party may file a renewed motion for judgment as a matter of law after the trial. Fed. R. Civ. P. 50(b).  It is well-settled that the standard for judgment as a matter of law is the same as the standard for summary judgment.  Reeves, 530 U.S. at 150 (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 250-52 (1986)).

1   Summary judgment is appropriate where "there is no genuine issue as to any
2   material fact" and "the moving party is entitled to a judgment as a matter of law."  Fed.
3   R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions
4   of the record that demonstrate the absence of a fact or facts necessary for one or more
5   essential elements of each cause of action upon which the moving party seeks judgment.
6   See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

7   If the moving party has sustained its burden, the nonmoving party must then
8   identify specific facts, drawn from materials on file, that demonstrate that there is a
9   dispute as to material facts on the elements that the moving party has contested.  See
10  Fed. R. Civ. P. 56(c).  The nonmoving party must not simply rely on the pleadings and
11  must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l
12  Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex Corp., 477 U.S. at 324.
13  Summary judgment must be granted for the moving party if the nonmoving party "fails
14  to make a showing sufficient to establish the existence of an element essential to that
15  party's case, and on which that party will bear the burden of proof at trial."  Id. at 322;
16  see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

17  In light of the facts presented by the nonmoving party, along with any undisputed
18  facts, the Court must decide whether the moving party is entitled to judgment as a matter
19  of law.  See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631
20  & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences
21  to be drawn from the underlying facts . . . must be viewed in the light most favorable to
22  the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
23  U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,
24  121 F.3d 1332, 1335 (9th Cir. 1997); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th
25  Cir. 1994) (articulating the same standard in the context of a directed verdict).  Summary
26  judgment for the moving party is proper when a rational trier of fact would not be able to
27  find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

28

In a motion for summary judgment, a court must review the record "taken as a whole." Matsushita, 475 U.S. at 587. Similarly, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. Reeves, 530 U.S. at 150. In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Id. (citations omitted); see also Berry, 39 F.3d at 1057. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 447 U.S. at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 530 U.S. at 151 (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 at 299 (2d ed. 1995)). In other words, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151 (citing Wright & Miller, supra, at 300).

## IV.    DISCUSSION

### A.    Notice of Reduction in Coverage

Defendant argues that plaintiffs were not entitled to coverage under policy form AU9700, which was the applicable policy form at the time of the underlying suit. Mot. at 6. Defendant contends that plaintiffs were not entitled to notice of the policy form change in 1997 because Cal. Ins. Code § 678, which requires notice of a reduction in coverage, only applies to "named insureds" or "additional named insureds." Id. at 7. Defendant argues that the record is devoid of any evidence that plaintiffs were ever named insureds or additional named insureds. Id. Defendant argues that plaintiffs cannot establish that MBM was an additional named insured based on (1) a request that MBM be added as an additional insured; (2) defendant's "narrative" or "notes" taken by someone in defendant's customer service department; (3) a certificate of insurance

6

showing that MBM is a mortgagee; (4) a declarations page which says the policy was amended on March 29, 1995; and (5) communications made in the claims process by defendant's personnel. Id. at 8.

Defendant argues that there is no evidence that MBM's request to become an "additional insured" was ever effectuated. Mot. at 9. Defendant further argues that the request was not to add MBM as an "additional named insured," but rather as an "additional insured." Id. Similarly, defendant argues that the "narrative" (1) is used to record customer service requests and is not an actual record and (2) reflects a request to add MBM as an "additional insured" and not an "additional named insured." Id. at 10.

Defendant further argues that an "Evidence of Insurance" form that plaintiffs received from Eid Haddad in July 2001, which references policy form AU9700, is not determinative because it applies to the policy period from March 29, 1995, to December 11, 1995. Mot. at 10. Defendant concedes that the applicable form for this time period was AU9700, but contends that the form changed to AP529 in December 1997. Id. at 10-11. Defendant further contends that the "Evidence Insurance" does list MBM as an insured, but only as a mortgagee.

Moreover, defendant argues that the amended declarations page does not state how the policy was amended. Mot. at 11. Defendant further argues that even assuming that the policy was amended to grant plaintiffs' request to add MBM as an "additional insured," there is no evidentiary basis for finding that MBM was an "additional named insured." Id. Additionally, defendant argues that its claims handler Susan Price, and its coverage counsel, David Prager, did not "admit" that MBM was an additional named insured. Id. at 12. Defendant claims that "[a]t most, their letters state that MBM was added as an additional insured – not an additional named insured or named insured." Id. Defendant further argues that because the policy provision has a plain meaning, it is immaterial that its agents, employees, or other representatives have misrepresented that meaning. Id. (citing Chatton v. Nat'l Union Fire Ins. Co., 10 Cal. App. 4th 846, 865 (1992); Prudential Ins. Co. of America, Inc. v. Superior Court, 98 Cal. App. 4th 585, 603

1   (2002)).

2         Furthermore, defendant argues that plaintiffs were not entitled to notice of the

3   policy change as mortgagees.  Mot. at 14.  Defendant acknowledges that a provision in

4   form AU9700 states that defendant will "give the mortgagee at least 10 days notice if

5   [defendant] cancel[s] or refuse[s] to continue or renew this policy."  Id.  Defendant

6   contends, however, that this provision does not apply to the policy form change from

7   AU9700 to AP529 because the change was neither a cancellation of the policy nor a

8   refusal to renew the policy.  Id.  Defendant further contends that notice of a reduction in

9   coverage is governed by Cal. Ins. Code § 678(a)(1), which only requires defendant to

10   provide notice to a named insured.  Def. Supp. Br. at 6.

11         Additionally, defendant argues that the policy does not place any specific

12   conditions on defendant with respect to notifying insureds regarding changes in

13   coverage.  Def. Supp. Br. at 3.  Defendant further argues that even if a reduction in

14   coverage is construed as failing to continue or renew, the policy only requires defendant

15   to provide notice of failure to continue or renew to insureds named on the declarations

16   page of the policy.  Id. at 4.

17         Plaintiffs respond that Cal. Ins. Code § 678 does not modify contractual notice

18   requirements.  Opp'n at 8.  Plaintiffs argue that statutory provisions in the California

19   Insurance Code may not be read into a policy to the insured's detriment.  Id. (citing Utah

20   Prop. & Cas. Ins. Guaranty Ass'n v. United Service Auto Ass'n, 230 Cal. App. 3d 1010,

21   1017 (1991); Clarendon Nat'l Ins. Co. v. Ins. Co. of the West, 442 F. Supp. 2d 914, 929-

22   30 (E.D. Cal. 2006)).  Plaintiffs contend that form AU9700 requires defendant to give

23   mortgagee insureds 10 days notice, and insureds 30 days notice, if they cancel or refuse

24   to continue or renew the policy.  Id. (citing Ex. 19 at 16, ¶ 9(b)).

25         The Court concludes that plaintiffs were entitled to notice of the policy change as

26   mortgagees.  Policy form AU9700 clearly provides that defendant shall "give the

27   mortgagee at least 10 days notice if we cancel or refuse to continue or renew this

28   policy."  Ex. 19 at 16, ¶ 9(b).  Defendant cannot avoid this notice requirement by

1    claiming that the change in policy to form AP529 was not a cancellation; policy form

2    AP529 substantially reduced coverage and therefore plaintiffs were entitled to notice of

3    that change.[1] Fields v. Blue Shield of California,163 Cal. App. 3d 570, 579 (1985) ("It

4    is a long-standing general principle applicable to insurance policies that an insurance

5    company is bound by a greater coverage in an earlier policy when a renewal policy is

6    issued but the insured is not notified of the specific reduction in coverage."). Plaintiff's

7    rights are not altered by Cal. Ins. Code § 678, which cannot be used to limit the rights of

8    an insured. Clarendon, 442 F. Supp. 2d at 930 ("Less favorable coverage provisions of a

9    statute will not be read into the policy to the insured's detriment.").

10              **B.      Coverage as Mortgagee Insureds, Property Managers or Employees**

11              Defendant argues that plaintiffs are not entitled to third-party liability coverage as

12   mortgagees. Mot. at 13.  Defendant contends that a mortgagee is only entitled to first-

13   party property coverage of the policy. Id. at 14.  Defendant argues that mortgagees are

14   not insureds under the liability section of the policy.  Defendant further argues that the

15   language in form AU9700 to the effect that "[a]ll provisions of this policy apply to

16   mortgagees" should be evaluated in light of the insured's "objectively reasonable

17   expectations."  Def. Supp. Br. at 7.  Defendant contends that it is not objectively

18   reasonable for a mortgagee to expect liability coverage under a landlord policy. Id. at 8.

19              Defendant further argues that although form AP529 includes in the definition of

20   "Insured Person" any "person or organization while acting as [the named insured's] real

21   estate manager for the residence premises," plaintiffs were sued in the underlying suit

22   only in their capacity as a mortgagee and lienholder of Annino, not as real estate

23   managers. Id. at 14.  Similarly, defendant argues that plaintiffs are not covered as

24   Annino's employees because plaintiffs have admitted that they were not employees of

25   Annino. Id. at 15.  Defendant further argues that even if plaintiffs were Annino's

26   _____

27              [1] Policy form AU9700 provides that "[a]ll provisions of this policy apply to
     mortgagees," while policy form AP529 provides that "[a]ll provisions of Section I of this
28   policy apply to these mortgagees."

1  employees, they would not be entitled to coverage because the claims in the underlying

2  suit did not arise out of their actions within the course and scope of any alleged

3  employment. <u>Id.</u>

4         Moreover, defendant argues that plaintiffs are not entitled to coverage because the

5  underlying suit alleges that plaintiffs conspired to defraud the Felmans by making

6  intentional misrepresentations. Mot. at 17. Defendant contends that the policy does not

7  provide coverage for intentional acts.

8         Plaintiffs respond that the evidence established that they were entitled to coverage

9  as mortgagee insureds. Opp'n at 2. Plaintiffs argue that (1) they were mortgagees from

10 the inception of the policy (Pre-Trial Order ¶ 5); (2) defendant knew that they were

11 listed as mortgagee insureds in 1995 (Haddad Testimony at 10:16-18); (3) coverage X in

12 form AU9700 required defendant to defend claims based on the tort of

13 misrepresentation; (4) form AU9700 states that "[a]ll provisions of this policy apply to

14 these mortgagees; (5) defendant's agent and coverage counsel testified that the phrase

15 "all provisions of the policy" included the provisions in coverage X of form AU9700

16 (Haddad Testimony at 27:3-28:11; Prager Testimony at 73:22-75:13); (6) form AU9700

17 required defendant to give mortgagees 10 days notice if it cancelled or refused to

18 continue or renew the policy (Ex. 19 at 16, ¶ 9(b)); (7) the evidence of insurance issued

19 each year since1988 required defendant to give notice to the mortgagees if the coverage

20 provided in form AU9700 is terminated; (8) defendant did not give plaintiffs notice that

21 it was refusing to continue coverage for misrepresentation and was reducing coverage to

22 mortgagees when it replaced form AU9700 with form AP529 (Pre-Trial Order ¶ 5); and

23 (9) the broader coverage in an earlier policy controls if the insurer fails to give notice of

24 the reduction in coverage, <u>Allstate Ins. Co. v. Fibus</u>, 855 F.2d 660, 663 (9th Cir. 1988).

25 <u>Id.</u> at 2-3. Plaintiffs contend that these facts conclusively demonstrate that they were

26 entitled to coverage as mortgagees under coverage X. Opp'n at 4. Plaintiffs argue that

27 an insurance policy is to be interpreted in its "ordinary and popular sense." <u>Id.</u> at 5

28 (citing <u>Romano v. Mercury Ins. Co.</u>, 128 Cal. App. 4th 1333, 1342 (2005)).

The Court concludes that plaintiffs were entitled to coverage under the policy as mortgagee insureds.  Plaintiffs were plainly listed as mortgagees from the time of the inception of the policy.  Pre-Trial Order ¶ 5.  Furthermore, policy form AU9700 clearly provides that all provisions of the policy apply to mortgagees, including coverage X, which provides coverage for claims of misrepresentation.  Considering the plain meaning of  "[a]ll provisions of this policy apply to mortgagees," and the trial testimony of defendant's agent, the Court concludes that plaintiffs were entitled to coverage for the misrepresentation claims in the underlying suit as mortgagee insureds.[2]  <u>Haynes v. Farmers Ins. Exch.</u>, 32 Cal. 4th 1198, 1204 (2004) ("When interpreting a policy provision, we give its words their ordinary and popular sense except where they are used by the parties in a technical or other special sense.").

### C.   Plaintiffs' Bad Faith Claim

Defendant argues that plaintiff's bad faith claim fails as a matter of law because defendant did not breach the insurance contract.  Mot. at 17-18.  Defendant further argues that there was a genuine dispute as to coverage and therefore defendant cannot be liable for bad faith.  <u>Id.</u> at 18 (citing <u>Jordan v. Allstate Ins. Co.</u>, 148 Cal. App. 4th 1062, 1072-73 (2007)).  Defendant contends that there is no evidence that its conduct was unreasonable.  <u>Id.</u>  Defendant further argues that it engaged legal counsel and made a legal determination that there was no coverage under the operative policy.  <u>Id.</u>

---

[2] Defendant's agent Eid Haddad testified that

Q: And in your practice as an insurance agent, you knew that all provisions of the policy apply to a mortgagee that was listed in an endorsement such as MBM; correct, sir?
A: I believe so.

Q: And one of the provisions that is applicable to mortgagees is a notice provisions; isn't that correct?
A: I believe so

Pl. Ex. Folio, Ex. K at 32.

The Court concludes that defendant is not entitled to judgment as a matter of law on plaintiffs' bad faith claim.  Plaintiffs introduced evidence at trial that (1) defendant concealed policy form AU9700 from plaintiffs; (2) defendant did not notify plaintiffs of the change in policies despite the requirement in policy form AU9700; and (3) defendant knew that form AU9700 existed, but did not conduct any investigation into whether that form applied and continued to deny coverage.  From this evidence, a reasonably jury could have concluded that defendant acted in bad faith.  <u>Chase v. Blue Cross of California</u>, 42 Cal. App. 4th 1142, 1152 (1996) (holding that part of an insurer's duty of good faith and fair dealing is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy.").

**D.      Plaintiffs' Claim for Declaratory Relief**

As further discussed supra, defendant had a duty to defend the underlying lawsuit under policy form AU9700, which was the policy form applicable to plaintiffs.  Therefore, plaintiffs are entitled to judgment on their declaratory relief claim and the Court finds that (1) defendant had a duty to defend the Felman lawsuit; and (2) defendant shall pay all damages caused by its refusal to defend.  The Court will address the issue of whether defendant shall pay the attorneys' fees and costs incurred by plaintiffs in collecting the policy benefits in a separate order.  <u>Brandt v. Superior Court</u>, 37 Cal. 3d 813, 817 (1985) ("When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense.")

**E.      Plaintiffs' Claim for Punitive Damages**

Defendant argues that plaintiffs have failed to produce clear and convincing evidence of oppression, fraud, or malice.  Mot. at 20.  Defendant asserts that the threshold question is whether the decision that there was no duty to defend was made by an officer, director or managing agent of defendant.  <u>Id.</u> at 21.  Defendant argues that Susan Price, who made this decision, was merely a claims handler who did not "exercise substantial independent authority and judgment in [her] corporate decision making so

that [her] decisions ultimately determine corporate policy." <u>Id.</u> (quoting <u>White v. Ultramar</u>, 21 Cal. 4th 563, 566-67 (1999)).

Plaintiffs respond that punitive damages are warranted because the evidence proffered at trial demonstrated that defendant (1) instructed its claims analyst and coverage counsel to limit their analysis to form AP529, even though Dick Ray testified that he received the evidence of insurance from Haddad and knew that the applicable policy form was AU9700; (2) did not diligently search for evidence which supported plaintiffs' claims and adopted an unreasonably narrow interpretation of the policy language to avoid coverage; (3) refused to respond to plaintiffs' tender of defense for almost three months; (4) failed to disclose to plaintiffs all policies that could apply to their tender of defense; (5) did not create or maintain guidelines for processing tenders of defense and guidelines for denials of tenders; (6) had a policy of evaluating claims based on the then current policy and not to investigate whether an earlier policy with broader coverage was applicable for the last 21 years; and (7) concealed records from plaintiffs showing they had been added as insureds in 1995. <u>Id.</u> at 3-4.

In light of the evidence produced at trial, as detailed in the preceding paragraph, the Court cannot conclude that "a reasonable jury would not have a legally sufficient evidentiary basis to find" that defendant's conduct was malicious, oppressive or in reckless disregard of plaintiff's rights. <u>Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.</u>, 78 Cal. App. 4th 847, 892 (2000) ("the jury could reasonably perceive a careless disregard for the rights of its insured and an obstinate persistence in an ill-advised initial position. We think that this conduct might conceivably support a finding that the insurer acted 'with a willful and conscious disregard of the rights . . . of others' within the definition of 'malice.'").  Furthermore, the acts of claims adjusters Susan Price and Dick Ray were ratified by "an officer, director, or managing agent" of defendant.  Cal. Civ. Code § 3294(b).  On November 13, 2006, plaintiffs sent a letter to defendant's general counsel and senior vice president describing the conduct of defendant's agents in the handling of plaintiffs' claim and requesting corrective action.

Ex. 28. Defendant's failure to take corrective action and defense of this suit amounts to ratification of its agents' conduct. <u>See</u> <u>Chodos v. Insurance Co. of North America</u>, 126 Cal. App. 3d 86, 103 (1981) ("[Insurer's] choice to respond to the summons and complaint rather than settle the matter removes any doubt about 'ratification' of the procedure utilized by [its] employees."); <u>see also</u> <u>Rogers v. United Services Auto. Assn.</u>, 2005 WL 1231505 at *16-17 (Cal. Ct. App. May 24, 2005).

## V.      CONCLUSION

In accordance with the foregoing, the Court hereby DENIES defendant's motion for judgment as a matter of law.

Furthermore, the Court shall enter judgment for plaintiffs on their claim for declaratory relief.


IT IS SO ORDERED


Dated: August 6, 2009

                                        CHRISTINA A. SNYDER
                                        UNITED STATES DISTRICT JUDGE